[No. 19147. Department One.—October 20, 1893.]

MAGGIE PHELAN ET AL., RESPONDENTS, *v.* EDWARD SMITH, APPELLANT.

ESTATES OF DECEDENTS—PROBATE HOMESTEAD—DEED FROM WIDOW— TENANCY IN COMMON.—A deed from a widow granting all of her individual estate in a tract of land which was the community property of herself and her deceased husband is taken subject to the right of the widow to have the land set apart by the probate court as a homestead for herself and her minor child, and her grantee cannot take as a tenant in common in such manner as to defeat such right; but the right of such grantee if not defeated is at least suspended during the period of the occupancy of the property as a homestead.

ID.—EJECTMENT—PLEADING—ISSUE AS TO COTENANCY.—In an action of ejectment against such grantee by the widow and minor child, where the complaint avers title in plaintiffs and ouster by defendant, and the answer denies each and every material allegation of the complaint, and pleads the bar of the statute of limitations, such pleading contests the right of the defendant to possession as a tenant in common with the infant plaintiff.

ID.—DENIAL OF TITLE OF COTENANT—OUSTER.—The denial of the title of a cotenant in an answer is equivalent to an ouster.

ID.—EVIDENCE OF OUSTER.—Evidence of a demand by the plaintiffs upon the defendant to be let into the possession of the property, and of the refusal of such demand, and the withholding of the possession of the property from the plaintiffs is sufficient evidence to authorize the court to find an ouster.

ID.—VALIDITY OF PROBATE PROCEEDINGS—RECOVERY BY INFANT HEIR.— An infant heir, notwithstanding the invalidity of probate proceedings, may recover his interest in the real property and possession thereof, except as against the administrator.

ID.—INVENTORY OF ESTATE—AFFIDAVIT OF ADMINISTRATRIX—CLERICAL ERROR—HOMESTEAD.—In an affidavit of an administratrix indorsed upon an appraisement or attached to an inventory, in almost the precise language of section 1449 of the Code of Civil Procedure, the substitution of the word "decedent" instead of "affiant" in the final sentence, so as to make it read "and of all just claims of the said deceased against the said decedent" instead of against the said "affiant," is a mere clerical error, which cannot vitiate subsequent proceedings setting apart a homestead.

ID.—OBJECT OF AFFIDAVIT.—The object of requiring such an affidavit is apparently not to give validity to the inventory as such, but to furnish evidence that it contains all the property within the knowledge and possession of the administrator; and the absence of the affidavit cannot vitiate an order setting apart a homestead.

ID.—DIRECTORY STATUTE—TIME OF FILING INVENTORY.—The clause in the code, requiring the administrator to file an inventory and appraisement within three months after he is appointed, is directory, and does not render the inventory and appraisement invalid when subsequently filed.

ID.—SECOND INVENTORY.—Where from the discovery of other property, or destruction or loss of part of the property, or from any other cause, a second or further inventory and appraisement is desirable, the court may permit it to be filed, and inform itself thereby of the true condition of the estate.

ID.—SETTING APART OF HOMESTEAD—PROCEDURE—POWER OF COURT.— The code does not point out the steps to be pursued in setting apart a probate homestead, where none has been declared by the husband and wife, or one of them, during the lives of both parties, and in such case the court may adopt any suitable method of procedure conformable to the spirit of the code.

ID.—DECREE SETTING APART HOMESTEAD—COMMUNITY PROPERTY—DURATION OF HOMESTEAD.—A decree setting apart a homestead upon community property for the use of the family of the deceased, consisting of the widow and two minor children, is not erroneous by reason of

setting it apart absolutely, and not for a limited period. It is only where a homestead is set apart from the separate property of the deceased, that it is required to be for a limited period.

ID.—" USE OF THE FAMILY."—Where the petition for a homestead asked that it be set apart for the widow and her two children, which is shown by the record to constitute his family, a decree purporting merely to set apart the homestead for the "use of the family" of the deceased, without mentioning the widow and children in the decree, must be construed as using the term "family," in the sense of the statute providing for homesteads, to denote the surviving wife and children, and is sufficiently explicit to describe them.

ID.—COLLATERAL ATTACK UPON DECREE.—Where proceedings setting apart the homestead in the probate court are collaterally attacked in an action of ejectment, such collateral attack can only avail by showing errors which render the decree absolutely void, and not merely voidable.

ID.—WAIVER OF HOMESTEAD—EVIDENCE—DECLARATION OF HOMESTEAD BY WIDOW.—The right to a homestead upon the community property which inures to the widow and her children jointly cannot be individually waived by any act of the widow, and evidence that after the death of the husband the widow purchased with her separate funds land upon which she declared a homestead, which was sold under a foreclosure sale, and subsequently redeemed and sold by her before the application for a probate homestead, is not admissible to show a waiver thereof on her part.

Id.—EFFECT OF DISTRIBUTION.—A decree of distribution, entered long after a homestead was set aside by the probate court, can have no bearing upon the action of the court in the homestead matter, or affect the rights of the family to which it is set apart.

ID.—STATUTE OF LIMITATIONS—ADVERSE POSSESSION—ENTRY UNDER CONTRACT OF SALE.—Where the individual grantee of the widow entered under a contract of sale from her, such entry was in subordination to the right of the widow and children to have the land set apart as a probate homestead, and did not become adverse to any of them until the date of the deed from the widow, and an action of ejectment commenced less than five years after the execution of the deed is not barred by the statute of limitations.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*O'Melveney & Henning,* for Appellant.

One-half the community property vested in the widow upon the death of the intestate. (Civil Code, sec. 1402.) Her title was independent of any decree of distribution. (*Chever* v. *Ching Hong Poy,* 82 Cal. 71.) Her deed to defendant was a grant absolute, and is to be interpreted

in favor of the grantee. (Civil Code, sec. 1069.) The grant conveyed any after-acquired title, or claim of title, of the grantor. (Civil Code, sec. 1106.) In *Estate of Moore*, 57 Cal. 437, the deed was a quitclaim deed, and the *dicta* in that case should not apply to this case. The demand by the plaintiffs of exclusive possession of the homestead, which was a particular part of a larger tract, and a refusal of such demand, do not constitute an ouster by the defendant of the minor child Mary O'Connor, as a cotenant of the defendant. (*Carpentier* v. *Mendenhall*, 28 Cal. 485; 87 Am. Dec. 135.) No ouster is shown of the minor Mary O'Connor, and ejectment cannot be sustained by her.

*Chapman & Hendrick*, and *W. I. Foley*, for Respondents.

A denial of the title of a cotenant in an answer is equivalent to an ouster, and a refusal to let the cotenant into possession on demand is sufficient evidence of ouster. (*Miller* v. *Myles*, 46 Cal. 538; *Spect* v. *Gregg*, 51 Cal. 198; *Greer* v. *Tripp*, 56 Cal. 209.) The probate homestead vested title in the widow and surviving children, and is unaffected by the prior deed of the widow. (*Estate of Moore*, 57 Cal. 437; *McDonald* v. *Burton*, 68 Cal. 454; *McKinnie* v. *Shaffer*, 74 Cal. 616; *Lord* v. *Lord*, 65 Cal. 86; *Kearney* v. *Kearney*, 72 Cal. 592; *Mawson* v. *Mawson*, 50 Cal. 542; Code Civ. Proc., secs. 1465, 1468.) The order setting apart a homestead was a judgment *in rem*, and cannot be collaterally attacked. (*Kearney* v. *Kearney*, 72 Cal. 592; *Gruwell* v. *Seybolt*, 82 Cal. 10; *Leach* v. *Pierce*, 93 Cal. 618; *Cecil* v. *Cecil*, 19 Md. 72; 81 Am. Dec. 626; *In re Maxwell*, 74 Cal. 385; *Grignon* v. *Astor*, 2 How. (U. S.) 319; *Estate of Walkerly*, 81 Cal. 580; Freeman on Judgments, sec. 319 (b.); Code Civ. Proc., secs. 1465, 1908.) No course of procedure being pointed out by the code, the court can adopt its own mode of procedure. (Code Civ. Proc., sec. 187; *Mawson* v. *Mawson*, 50 Cal. 542; *In re Burdick*, 76 Cal. 645; *In re Sharp*, 78 Cal. 484.)

SEARLS, C.—This is an action of ejectment to recover a parcel of land situate in the county of Los Angeles. Plaintiffs had judgment, from which and from an order denying a motion for a new trial defendant appeals.

The parcel of land in question is part of a larger tract of which John O'Connor died seised July 21, 1882. The entire tract was community property of John O'Connor and Maggie O'Connor (now Maggie Phelan), his wife.

John O'Connor died intestate and left him surviving the said Maggie, his widow, and their two minor children, Louis Francis, who died intestate, a minor without issue, February 22, 1889, and the plaintiff, Mary O'Connor, who is still a minor.

Maggie O'Connor was on the thirteenth day of October, 1882, appointed guardian of the person and estate of her infant daughter, Mary O'Connor, and on the 8th of November, 1882, she was duly appointed administratrix of the estate of her deceased husband, and qualified as such administratrix.

On the 14th of April, 1883, Maggie O'Connor entered into an agreement with the defendant, Edward Smith, and his brother, W. D. Smith, whereby she agreed to convey to them a tract of land consisting of nine and three-quarter acres, which includes the land involved in this action. The consideration was three thousand dollars.

W. D. Smith assigned his interest in the contract to defendant, and the consideration therefor having been paid, on the first day of September, 1885, Maggie O'Connor conveyed the undivided one-half of the land by deed of grant to the defendant.

The land so conveyed was community property as aforesaid, and belonged to the estate of John O'Connor, deceased.

No order or authority of the probate court was had, either authorizing or approving such sale, and it was made by Maggie O'Connor individually and not in any representative character.

Defendant went into possession of the land at the date of the agreement, by consent of Maggie O'Connor, and since the date of the conveyance has remained in possession, claiming title to an undivided one-half thereof under said deed and not otherwise, adversely to plaintiffs, and has paid all taxes levied thereon.

On July 9, 1888, the land was appraised as of the estate of John O'Connor, deceased, in two parcels. The first parcel, being the land in dispute in this action, was appraised at four thousand five hundred dollars, and the second parcel at three thousand five hundred dollars.

On the eighteenth day of August, 1888, said Maggie O'Connor as administratrix of the estate of John O'Connor, deceased, filed her petition in the superior court asking that parcel one of the land aforesaid, with the dwelling-house thereon, be set apart by said court as a homestead for the use of said Maggie O'Connor, widow as aforesaid, and her two minor children aforesaid, and such proceedings were thereafter had that on the eighteenth day of August, 1888, said first parcel of land, with the dwelling-house, etc., thereon, was set apart by the court as a homestead.

After the death of Louis Francis O'Connor, and on the fifteenth day of August, 1889, a decree of distribution in the matter of said estate was given and made, by which decree three-fourths of said estate was awarded and distributed to Maggie O'Connor, the widow, and one-fourth part thereof to Mary O'Connor, the surviving child.

Maggie O'Connor, on the eleventh day of March, 1889, married E. F. Phelan, and still is the wife of said Phelan.

Appellant contends that as against the plaintiff, Maggie Phelan, the deed of September 1, 1885, from her to him divested her of all title she had to the land, and that she had the one-half thereof under section 1402 of the Civil Code.

That if the decree of the court setting aside the home-

stead out of the estate of John O'Connor vested any new interest or estate in said Maggie, the same inured to her grantee, and that the homestead decree is not sufficient to enable her to maintain ejectment against her grantee.

"Upon the death of the husband, one-half of the community property goes to the surviving wife. . . . .

"In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance, and the charges and expenses of administration." (Civil Code, sec. 1402.)

We assume at the outset of the inquiry that whatever title Maggie O'Connor could at the date of her deed convey to defendant in and to the undivided one-half of the property in question passed to the latter by her deed.

Her deed being in form and substance one of grant, an after-acquired title vesting in her as an individual, and which she could convey as such, passed by operation of law to her grantee under such deed.

It remains to inquire as to her capacity to convey an interest in the community property of her deceased husband pending proceedings in administration, and the limitations, if any, attaching to the title conveyed.

"The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the probate court and to the possession of any administrator appointed by that court for the purposes of administration." (Civil Code, sec. 1384.)

The title to one-half of the community property, under sections 1384 and 1402 of the Civil Code, upon the death of the husband who dies intestate at once vests in the surviving wife, subject to the payment of debts, etc., and subject to the exercise by the probate court of the powers over it vested in that court, and qualified or subject to be qualified by the exercise of those powers.

The objects of administration were discussed at considerable length in *Estate of Moore,* 57 Cal. 437. That

case, like the present, was one in which the husband died intestate, leaving community property, and one in which there had been no homestead declared during the lives of the spouses.  The widow had there, as here, conveyed her interest in the real property, the only difference being that in that case it was by quitclaim deed, while here it is by grant.

She subsequently applied to have a homestead for herself and children carved out of the real estate so conveyed.  The court below refused her application. On appeal this court, in reversing the order denying a homestead, said: "The deed of Mrs. Moore is silent upon the subject of homestead; whatever its effects as a conveyance, it was no more than to convey the interest in the property of the deceased, which she received upon his death by succession.  A homestead right, or a right to have a homestead, is not a right which vests under the law by succession.  It is a right bestowed by the beneficence of the law of this state for the benefit of the family.  Upon the death of an intestate, his property goes by succession to his heirs, subject to administration.  The objects of administration are: 1. To support the family for a period; 2. To set apart a homestead to the family; 3. To pay the expenses of administration; 4. To pay the debts of the deceased; 5. To distribute the balance of the estate to those who take it by law.  If an heir convey his interest in the estate, or any part thereof, he conveys such interest only as will remain to him after satisfying the first four objects above named, unless the deed should in terms expressly cover more.  Setting apart a homestead is a part of the probate proceeding as much as is a family allowance. . . . . The homestead, when set apart, is to be set apart for the benefit of the widow and children. . . . . It certainly could not be said that her deed, conveying her interest as successor, would interfere with and defeat the purpose of the law in giving the family an abiding place."  (*In re Lahiff,* 86 Cal. 151; *Estate of Moore,* 57 Cal. 446.)

The right to have a probate homestead carved out of the estate is in the nature of a charge upon the estate, from which the widow, under her right of succession, could no more discharge than she could free the estate from its liability for the debts of her deceased husband.

The right is inherent, not in her alone, but in the children as well, and she can no more foreclose their right thereto than she can their rights as heirs to the estate.

It is conferred for the beneficent purpose of affording a home in which the minor children may be sheltered and shielded from want.

To hold that the widow, or any less than all the parties in interest, can by a conveyance defeat the object of the law would be a fraud upon the rights of those not joining in such conveyance.

To say that the widow may convey her right to such a homestead, and that the grantee takes as a tenant in common with the children, is in effect to say there shall be no homestead. The law consecrates the homestead to a specific purpose, and that purpose can only be accomplished by making it a home for the family.

It must be held that the latter clause of section 1485 of the Code of Civil Procedure, which defines the rights of successors by purchase to homesteads, and to the right to have homesteads set apart to them, relates only to such purchasers as have succeeded to the rights of all the persons entitled to a homestead, and has no application to a case like the present, where defendant has succeeded to the right of one only of such persons. It follows that the widow's conveyance was subject to the homestead right which it was the duty of the court to set apart, and, when so consummated, the title which she had conveyed, if not defeated, was, as to the rights of defendant at least, suspended during the period of the occupancy of the property as a homestead.

Whether establishing the *status* of the property as a homestead had the effect of defeating the title conveyed to defendant *in toto*, or only to hold it in abeyance, in-

volves considerations of deep importance which are not necessary to the decision of this case, and upon which no opinion is expressed.

The contention of appellant that he has not contested the right of plaintiff, Mary O'Connor, to possession as a tenant in common with him, cannot be on the face of the record maintained.

The complaint avers title in plaintiffs, and ouster by defendant.

The answer denies each and every material allegation of the complaint, and pleads the bar of the statute of limitations.

The denial of title of a cotenant in an answer is equivalent to an ouster. (*Greer* v. *Tripp*, 56 Cal. 209; *Spect* v. *Gregg*, 51 Cal. 198; *Packard* v. *Johnson*, 51 Cal. 545; *Miller* v. *Myles*, 46 Cal. 535.)

Furthermore, the agreed statement of facts admits as follows: "On the fifteenth day of March, 1890, the plaintiff, the said Maggie Phelan, on behalf of herself and said Mary O'Connor, demanded of the said defendant that they be let into possession of the said property first herein specifically described, and so set apart as a homestead, and the said defendant refused, and has ever since withheld the possession of said property from the plaintiff."

This was abundantly sufficient evidence of ouster and refusal to deliver possession on demand. Demand and refusal of possession are not ouster, but they are such evidence as will authorize a court to find an ouster.

To the introduction of the probate proceedings in the matter of the estate of John O'Connor, deceased, purporting to show the appraisement and inventory of the estate, the order setting apart the homestead and the decree of distribution, the defendant objected, and the action of the court in admitting the evidence is assigned as error as follows:

1. That the appraisements (there were two) are invalid because not verified by the administratrix as required by section 1449 of the Code of Civil Procedure.

2. The appraisement was not returned within three months as required by section 1443 of the Code of Civil Procedure.

3. There is no authority for appraising one parcel of land in two parcels "for the purpose of homestead" or for any other purpose.

4. There was no authority for appointment of the last set of appraisers unless the first appraisement was invalid. If the first appraisement was invalid it was because of the insufficient affidavit of the administratrix, and if this is so, the second is equally invalid because not showing by affidavit of administratrix that all the estate was appraised or what debts were owing by the affiant to deceased.

5. Error in admitting in evidence the decree of distribution, which is invalid for the reason that no valid appraisement or valid inventory was ever made or had, and because such decree does not affect the title of defendant or his right to possession.

So far as the infant plaintiff, Mary O'Connor, is concerned, none of these proceedings can affect her right to recover. If the probate proceedings are void, she may still, as the heir of her deceased father, recover her interest in the real property and possession thereof except as against the administrator. (Code Civ. Proc., sec. 1452.)

The affidavit of the administratrix, indorsed upon or attached to the second inventory and appraisement, is almost in the precise language of section 1449 of the Code of Civil Procedure, except that in the final sentence the last word is "decedent" instead of "affiant," thus making the affidavit read "and of all just claims of the said deceased against the said decedent" instead of "against the said affiant."

This is a mere clerical error which could not in any wise vitiate the subsequent proceedings.

The object of requiring an affidavit by the administrator or executor to accompany the inventory and appraisement is, apparently, not to give any validity to

the inventory as such, but to furnish evidence that it contains all the property within the knowledge and possession of the affiant, thus serving as a check upon the administrator.

We have no doubt that as a basis for action by the court in setting apart a homestead an inventory and appraisement, without any affidavit by the administrator, as provided for in section 1449 of the Code of Civil Procedure, would be quite sufficient. The clause in the code under which the administrator is required to file an inventory and appraisement within three months after his appointment is directory, and does not render them invalid when subsequently filed.

So, too, the filing of a second inventory is of no moment. If the first is in proper form, and the second involves no additions or changes, it is mere surplusage; but it may often occur from the discovery of other property, the destruction or loss of a portion of the property and from various other causes, that a second or further inventory and appraisement is desirable. In all such cases the court, under the powers conferred upon it, may, we have no doubt, inform itself by means of a new or further inventory and appraisement of the true condition of the estate.

In the present instance, we may well conclude, the court desired a segregation of the property for homestead purposes. This was proper. The code does not point out the steps to be pursued in setting apart a homestead where none has been declared by the husband and wife, or one of them, during the lives of the parties, and in such cases the court may adopt any suitable method of procedure conformable to the spirit of the code. (Code Civ. Proc., sec. 187.)

It was important for the court to be informed as to the value of the homestead which it was its duty under the law to set apart. It is objected that the decree setting apart the homestead is invalid on account of the appraisement and inventory not being regular, and for the further reason that " it does not set the

property apart to the widow and minor children, but to the family; and it does not purport to set apart for a limited period, but purports to set it apart absolutely," etc.

It is only .where a homestead is set apart from the separate property of the deceased that it is required to be for a limited period. (Code Civ. Proc., sec. 1468.) The petition for a homestead asked that it be set apart for the widow and her two children.

In the decree the language used is that the property (describing it) " is hereby set apart for the use of the family of said John O'Connor, deceased." The family of John O'Connor, deceased, is shown by the record to have consisted of the widow and two children. The term " family" is used in the chapter providing for homesteads in the sense of denoting the surviving wife and children. It relates to " the provision for the support of the family and of the homestead." Section 1464 provides that the widow or children may remain in possession of the homestead, " of all the wearing apparel of the family," etc.

Section 1466 requires the court to make allowance for the maintenance of the *family.* Section 1468 provides that when property " is set apart to the use of the family," etc.

If the estate is of less value than fifteen hundred dollars, and there be a widow or minor children, the court shall require parties interested to show cause. why it should not be set apart for the use of the *family.* (Sec. 1469.)

The term *family* throughout the chapter is used as synonymous with and as representing the surviving wife or husband and children, if any. When the court used the term " family " in its decree, we must hold that it expresses the meaning and is used in the sense of the statute, and is therefore sufficiently explicit to describe the widow and children.

We have referred to these several objections as if they were presented on an appeal from the decree setting

apart the homestead, but it must be borne in mind that this is a collateral attack upon those proceedings, and can only avail by showing such errors as render the decree not voidable, but absolutely void. (*Kearney* v. *Kearney*, 72 Cal. 592; *Grewell* v. *Seybolt*, 82 Cal. 10; *Leach* v. *Pierce*, 93 Cal. 618; *In re Maxwell*, 74 Cal. 385; Code Civ. Proc., sec. 1908, subd. 1; 1 Freeman on Judgments, sec. 319 b.)

The court did not err in ruling out as immaterial and irrelevant the evidence that, after the death of her husband, Maggie O'Connor purchased with her separate funds a lot of land in the town of Pomona, and resided upon the same with her children, and declared a homestead thereon, which lot was sold under a foreclosure sale, and subsequently redeemed and sold by her before the application for a homestead herein.

If, as before stated, the right to a homestead herein was one which inured to her and her children jointly, which she could not individually convey or waive, because of such joint right, then this evidence was not admissible, as the only effect of it would be to show a waiver on her part.

For like reasons there is nothing in the decree of distribution, entered long after the homestead was set aside, which could have a bearing upon the action of the court in the homestead matter, or affect the rights of the plaintiffs thereunder.

The possession of defendant under the agreement of April 14, 1883, was in subordination to the title of plaintiffs, and did not become adverse to plaintiffs, or either of them, until the date of the deed of September 1, 1885.

This action was commenced April 11, 1890, less than five years after the execution of the deed, hence the cause of action was not barred by the statute of limitations.

The judgment and order appealed from should be affirmed.

HAYNES, C., VANCLIEF, C., and TEMPLE, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

PATERSON, J., GAROUTTE, J., HARRISON, J.